UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

TANYA LADEANA BIRDWELL,                    )
                                           )
              Plaintiff,                    )
                                           )
v.                                         )      No.:   4:25-CV-10-TAV-MJD
                                           )
COMMISSIONER OF SOCIAL                     )
SECURITY ADMINISTRATION,                   )
                                           )
              Defendant.                    )

## MEMORANDUM OPINION

This civil matter is before the Court on a Report and Recommendation ("R&R")

issued by United States Magistrate Judge Michael J. Dumitru on February 18, 2026 [Doc.

24]. In the R&R, Judge Dumitru recommends that plaintiff's request for relief be denied

[Doc. 16], and that the Commissioner's request [Doc. 21] be granted. Plaintiff[1] timely

filed her objections to the R&R on March 4, 2026 [Doc. 25]. Defendant[2] filed a response

to plaintiff's objections [Doc. 26]. For the reasons that follow, plaintiff's objections

[Doc. 25] are **OVERRULED**, the Court **ACCEPTS** and **ADOPTS** the R&R in whole

[Doc. 24], plaintiff's request for relief [Doc. 16] is **DENIED**, and defendant's motion for

summary judgment [Doc. 21] is **GRANTED**.

---

[1] Throughout this memorandum opinion, plaintiff is also referred to as "claimant."

[2] Throughout this memorandum opinion, defendant is also referred to as "Commissioner."

## I. Background

The Court finds that the "Administrative Proceedings," "Factual Background," and "Eligibility and the ALJ's Findings" sections contained in the R&R adequately detail the relevant factual background and procedural history in this case [*See* Doc. 24, pp. 1–5].[3] As neither party has objected to these portions of the R&R, the Court incorporates them in part below:

> According to the administrative record, Plaintiff filed her applications for DIB and SSI on July 20, 2022, alleging disability beginning March 21, 2022. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was conducted by videoconference on February 6, 2024. On April 22, 2024, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act at any time between her alleged onset of disability date (March 21, 2022) and the date of the ALJ's decision (April 22, 2024). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.
>
> ….
>
> **A. Education and Employment Background**
>
> Plaintiff was born on February 14, 1977, making her 45 years old on the alleged onset of disability date, which is considered a "younger person." She has at least a high school education and can communicate in English. The ALJ found she has no past relevant work.
>
> **B. Medical Records**
>
> In her August 2022 Adult Disability Report, Plaintiff alleged disability due to several conditions: (1) degenerative disc disease; (2) left side bulged disc L2–3; (3) right side bulged disc L4–5; (4) permanent nerve damage in right

---

[3] As referenced *infra*, "DIB" refers to disability insurance benefits, and "SSI" refers to supplemental security income.

leg; (5) disc degeneration in C6 and C7; (6) radiculopathy cervical region; (7) shoulder surgery; (8) nerve pain in right hand after shoulder surgery; (9) cartilage in right knee is deteriorating; (10) prior compression fracture in L1; (11) high blood pressure; and (13) anxiety. While there is no need to summarize all the medical records herein, the relevant records have been reviewed.

## C. Hearing Testimony

At the hearing held by videoconference on February 6, 2024, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel during the administrative hearing, although a different attorney than currently represents her in these federal court proceedings. The Court has carefully reviewed the transcript of the hearing.

…

The ALJ found Plaintiff met the insured status requirements through December 31, 2027. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 21, 2022, Plaintiff's alleged onset of disability date.

At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar and cervical spine; (2) osteoarthritis of the right knee; (3) right shoulder rotator cuff tear; (4) obesity; (5) right carpal tunnel syndrome; (6) depressive disorder; and (7) anxiety disorder. The ALJ found Plaintiff had additional medically determinable impairments of GERD, hypercholesterolemia, and hypertension, but that these conditions were non-severe.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following qualifications/limitations:

- She can lift and carry up to 20 pounds occasionally and 10 pounds frequently.

- She can stand and walk for four hours and sit for six hours in an eight-hour workday.

- Regarding her right upper extremity, she can occasionally push and pull, occasionally reach overhead, and frequently handle and finger.

- She cannot climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs.

- She can occasionally kneel, crouch, crawl, stoop, and balance.

- She should avoid concentrated exposure to vibrations, unprotected heights, and moving machinery.

- She can understand, remember, and carry out simple and detailed tasks.

- She can maintain concentration, persistence, and pace for such tasks with customary breaks spread throughout the day.

- She can interact appropriately with supervisors and coworkers without limitation, but she can only occasionally interact with the public.

- She can adapt to occasional changes in the workplace.

At step four, the ALJ found Plaintiff did not have any past relevant work. At step five, however, the ALJ found there were unskilled occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including hand packager, production worker, and production inspector.

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between her alleged onset of disability date and the date of the ALJ's decision.

[*Id.* (internal citations omitted)].

As provided by the R&R, "[p]laintiff contends that the ALJ's decision should be reversed and remanded for further administrative proceedings" [*Id.* at 5]. In her Statement of the Issues, plaintiff included the following:

4

1.      Whether the ALJ supported with substantial evidence her finding at Step Five of the Sequential Evaluation Process for Determining Disability.

2.      Whether the ALJ supported with substantial evidence her analysis of Dr. Fisher's medical opinion.

[*Id.* at 6 (citing Doc. 16, p. 1)].

After considering the parties' arguments, the Magistrate Judge concluded, as to plaintiff's first issue, that the ALJ's step five determination is supported by substantial evidence in the form of the VE's testimony [*Id.* at 17]. As to the second issue raised by plaintiff, the Magistrate Judge found no error in the ALJ's consideration of the medical opinion evidence, determining that the ALJ "properly analyzed supportability and consistency as it applies to Dr. Fisher's opinion" and "ma[d]e[] clear why she did not fully credit Dr. Fisher's opinion" [*Id.* at 24].

## II.      Standard of Review

This Court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a party objects, unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira*, 806 F.2d at 637 (internal quotation marks omitted) (citation omitted). A general objection, in contrast to a specific objection, "has the same effect[ ] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant

5

must identify each issue in the report and recommendation to which the litigant objects with sufficient clarity such that the Court can identify it, or else that issue is deemed waived. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). Furthermore, each objection to a magistrate judge's recommendation should explain the source of the error. *Howard*, 932 F. 2d at 509.

In addition, if "objections merely restate the arguments asserted" earlier by a party, "which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)); *accord Thrower v. Montgomery*, 50 F. App'x 262, 264 (6th Cir. 2002) (affirming the district court's dismissal of the action because in part, plaintiff presented "no new arguments beyond those already addressed by the magistrate judge").

## III.  Analysis

Plaintiff makes two overall objections to the R&R [Doc. 25].  First, plaintiff argues that the Court should decline to adopt the Magistrate Judge's R&R because "he offers conflicting points that (a) the relevant issue is whether there are a sufficient number of jobs and (b) that the inability to meaningfully assess the basis of job number

6

testimony is irrelevant" [*Id.* at 1]. Second, plaintiff contends that the Court should decline to adopt the Magistrate Judge's "application of *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)" [*Id.* at 2].

### A. Conflicting Points Regarding Job Numbers

As mentioned above, plaintiff objects to the Magistrate Judge's statements as to job numbers [Doc. 25, pp. 1–2]. Specifically, plaintiff submits that the Magistrate Judge opined that "the relevant issue is whether there are a sufficient number of jobs" while also maintaining that "the inability to meaningfully assess the basis of job number testimony is irrelevant" [*Id.* at 1]. These points, plaintiff contends, are contradictory [*Id.*]. Furthermore, plaintiff argues that out of the 363,000 jobs the expert alleged to exist, only 2,170 positions could be verified in any meaningful way [*Id.* at 2]. And "the job numbers in this case were reduced by 50%" [*Id.*]. Plaintiff asserts that these "general references" lessen the reliability of the job data in this case [*Id.*]. Additionally, plaintiff avers that "[t]he Agency cannot abdicate its decision[-]making power to a VE based on the vague explanation of 'education and experience in the field' and unspecified 'research'" [*Id.*].

In response, defendant maintains that the Magistrate Judge properly evaluated and analyzed the ALJ's consideration of the VE's testimony [Doc. 26, pp. 1–2].

The Court begins with quoting the relevant portion of the R&R, as cited by plaintiff:

> Relatedly, Plaintiff contends the "VE never got the opportunity to clarify whether the representative jobs existed in numbers similar to the other

7

jobs" or whether the representative jobs are "[anywhere] near a sizable portion of the alleged group size." But this is beside the point. The question is whether there are a sufficient number of jobs, not whether, for example, the "hand bander" job makes up a sufficient portion of the broader category of "hand packager" jobs.

[Doc. 24, p. 13 (internal citation and footnote omitted)]. For clarity, the Magistrate Judge never explicitly stated that "the inability to meaningfully assess the basis of job number testimony is irrelevant[,]" but it appears that plaintiff claims this was implicit by the Magistrate Judge's statement that the VE's lack of opportunity to clarify certain aspects of representative jobs[4] "is beside the point" [*See id.*].

Reviewing plaintiff's brief [Doc. 16] in conjunction with the R&R [Doc. 24], it appears that the Magistrate Judge did not discard plaintiff's reliability argument but rather, understood it differently. Specifically, in her brief, plaintiff claims that the ALJ and, more particularly, the Appeals Council simply trusted the VE "regardless of whether information (that was readily available to the Agency in counsel's submissions) called into question the sufficiency of the [VE's] testimony" [Doc. 16, p. 8]. Plaintiff then elaborates on the VE's reliability, or the supposed lack thereof, providing:

> First, in being representative of a larger group, one would expect the representative occupations to form a sizable portion of the group or be similar to the other members of the group in terms of availability (otherwise extrapolation would be far to[o] improbable). However, (a) the VE never got the opportunity to clarify whether the representative jobs existed in numbers similar to the other jobs and (b) the representative jobs, which the VE cited by DOT number, are nowhere near a sizable portion of the alleged group size.

---

[4] As stated in the R&R [Doc. 24, p. 13 n.4], "representative jobs" appears to refer to the jobs the VE identified by Dictionary of Occupational Titles ("DOT") number.

[Doc. 16, pp. 8–9]. Despite plaintiff's intention of a reliability argument, it appears the Magistrate Judge took plaintiff's contentions as merely addressing whether a sufficient number of jobs existed. This is evident in the Magistrate Judge's analysis of plaintiff's argument, in which he noted that the proportion of representative jobs to their broader categories, e.g., "hand bander" jobs to "hand packager" jobs, does not affect the actual number of jobs and whether such numbers are sufficient. Accordingly, the Court does not find that the Magistrate Judge offered conflicting points here.

Furthermore, the Magistrate Judge addressed the reliability of the VE's testimony later in the R&R, contradicting plaintiff's assertion that the Magistrate Judge found the assessment of such testimony to be irrelevant [*See* Doc. 24, p. 14 (noting that the VE sufficiently explained her process for reaching the job numbers she did); *id.* at 15 (contrasting the present case with *Barry W.H. v. Comm'r of Soc. Sec.*, No. 2:23-cv-4068, 2024 WL 4540095, at *9 (S.D. Ohio Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 4852496 (S.D. Ohio Nov. 21, 2024) in which "the court found the VE's testimony unreliable because it was internally inconsistent"); *id.* at 16 (providing that the ALJ "could have explained in greater detail . . . why Plaintiff's counsel's cross-examination did not render the VE's testimony unreliable, but the fact that the ALJ did not do so in this case does not justify remand"); *id.* at 17 (citing to *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 791 (6th Cir. 2017) for the proposition that there is "no reason to suppose that the ALJ did not carefully weigh the credibility of witnesses who testified,

9

and the ALJ's acceptance of [the vocational expert's] testimony cannot be said to have been improper")].

Moreover, plaintiff provides no support for her reliability contention that "in being representative of a large group, one would expect the representative occupations to form a sizable portion of the group or be similar to the other members of the group in terms of availability" [Doc. 16, p. 8].  In fact, the VE in her testimony did not refer to the specific DOT numbers—i.e., 920.687-026, 222.687-014, and 529.687-114—as "representative" of the larger job category.  Rather, the VE referred to these DOT numbers as "example number[s]" [*See* Doc. 7, p. 98; *id.* at 103–04].  Thus, plaintiff's arguments about what "one would expect" in regard to "representative occupations" is unfounded.[5]

As noted above, plaintiff also argues that the VE's "general references" bear on the reliability of job data in this case [Doc. 25, p. 2].[6]  The Court finds this argument to largely be a reiteration of what plaintiff already presented to the Magistrate Judge [*See* Doc. 16, p. 9 ("There is no way to possibly determine whether the VE was being reasonable in her assertion that the three identified jobs (which do not exist in significant numbers even before reduction) and the alleged-but-not-identified jobs exist in significant numbers when reduced by 50 percent."); *see also* Doc. 24, p. 15 (noting that plaintiff's

---

[5]  The Court acknowledges that the ALJ attached the word "representative" to the occupations the VE listed specifically by DOT number in her decision.  But plaintiff's assertions here lie with the reliability of the VE and her testimony, not with the ALJ's descriptor.

[6]  The Court also notes, as to plaintiff's verification point, that an "ALJ ha[s] no duty to 'conduct an independent investigation into the testimony' of the vocational expert to verify its accuracy." *Stephens v. Astrue*, No. 1:09-cv-140, 2010 WL 3418256, at *8 (E.D. Tenn. June 28, 2010) (quoting *Martin v. Comm'r of Soc. Sec.*, No. 04-4551, 2006 WL 509393, at *5 (6th Cir. Mar. 1, 2006)).

counsel "did not question the VE regarding the VE's decision to reduce the pool of light, unskilled jobs by 50%, rather than say, 40% or 90%, during the administrative hearing")]. The Court is under no obligation to review objections that merely repeat what the Magistrate Judge has already reviewed. *See Modrall*, 2020 WL 2732399, at *2. And to the extent these are new arguments that were not presented before the Magistrate Judge, they are waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)) (noting that, absent compelling reasons, parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate"); *accord United States v. Burney*, No. 2:23-CR-79-1, 2024 WL 987877, at *3 (E.D. Tenn. Mar. 7, 2024*), aff'd*, No. 24-5613, 2025 WL 1896442 (6th Cir. July 9, 2025).

Finally, plaintiff emphasizes that "[t]he Agency cannot abdicate its decision[-]making power to a VE based on the vague explanation of 'education and experience in the field' and unspecified 'research'" [Doc. 25, p. 2]. While it appears this argument has already been substantially addressed by the Magistrate Judge [*see* Doc. 24, pp. 14–16], the Court makes a few observations. Foremost, while plaintiff takes issue with the VE relying on her education and experience in the field, a VE can, when offering testimony, "invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling'" [*See* Doc. 7, pp. 394–95 (resume of VE)]. *Biesteck v. Berryhill*, 587 U.S. 97, 100 (2019) (citing Social Security Ruling, SSR 00-4p, 65 Fed.

11

Reg. 75760 (2000)).[7]  Moreover, as noted by the R&R, plaintiff had no objections to the VE's qualifications at the administrative hearing [Doc. 24, p. 8].

As to "unspecified research," plaintiff elaborates that a general reference to the Occupational Employment Quarterly ("OEQ") "and the different research they do" should not be considered specific evidence [Doc. 25, p. 2 n.1; *see* Doc. 7, p. 104]. Plaintiff appears to ignore that the VE testified that OEQ has "been used and tested over the years" [Doc. 7, p. 102], and that the OEQ uses statistics from the Census Bureau and the Department of Labor [*Id.* at 104].  *See also Swincki v. Astrue*, No. 07-13596, 2009 WL 728544, at *19 (E.D. Mich. Mar. 19, 2009) (noting that the data in OEQ "is derived from government sources" and concluding that "[s]ince the publication is based on other government publications or data, of which the Agency generally takes administrative notice, the ALJ reasonably relied on the VE's testimony that was based on this resource"); *Guiton v. Colvin*, 546 F. App'x 137, 142–43 (4th Cir. 2013) (holding that the job numbers the VE provided, which were based on the OEQ information, "although perhaps somewhat imprecise, were sufficiently reliable to support the ALJ's conclusion"); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (citation omitted) (noting the OEQ "to be a source on which VEs customarily rely").  Furthermore, the ALJ provided that she determined the VE's testimony to be consistent with the information

---

[7] The Court notes that, effective January 6, 2025, SSR 00-4p was rescinded and replaced by SS 24-3p.  *See SSR 00-4p: Titles II and XVIL Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, Soc. Sec. Admin., https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html (last visited Mar. 26, 2026).  The ALJ in this case rendered her decision, however, on April 22, 2024 [Doc. 7, pp. 13–35; Doc. 24, p. 2].

contained in the DOT, except for the limitations of which the DOT does not address [*Id.* at 35].

Considering all the above, plaintiff's first objection is **OVERRULED**.

**B. Application of *Heston***

As discussed previously, plaintiff's second objection is to the R&R's citation and application of *Heston*, specifically the proposition in *Heston* that "a court may consider any evidence in the record, regardless of whether it has been cited by the ALJ" [Doc. 25, p. 2 (citing Doc. 24, p. 7)]. *See* 245 F.3d at 535. First, plaintiff argues that "the Sixth Circuit later explained that the basis for the *Heston* court's conclusion, that the court could consider the opinion that the ALJ did not address, was a "simple harmless error analysis" and "not an expansion of the court's reviewing powers" [*Id.* at 3 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004))]. Second, plaintiff asserts that the *Heston* opinion is from 2001, and the laws have changed since then [*Id.*]. Specifically, the *Heston* court's conclusion was "seated in a regulation with less developed articulation requirements" [*Id.*].

From these points, plaintiff turns to the R&R, stating that the Magistrate Judge provided "an elaboration on the reasoning used to assess Dr. Fisher's opinion" which was not in the ALJ's decision:

> Specifically, Dr. Fisher opined: "I do not foresee her being able to perform jobs which require any prolonged standing, bending, or twisting motions"; and "She should be able to perform jobs with require sitting with intermittent breaks." However, the ALJ stated that part of the reason for discounting Dr. Fisher's opinion is that Dr. Fisher did not provide a

13

complete, function by function vocational assessment. Clearly, the ALJ was referring to these vague aspects of Dr. Fisher's opinion.

[*Id.* (citing Doc. 24, p. 23) (internal citation omitted)]. Plaintiff contends that the "Agency did not link the 'complete, function by function' language to vagueness, much less identify Dr. Fisher's language as materially vague" [*Id.* at 4]. And for the Court to link them is improper as "a court is not to burden itself connecting lines that were not connected at the administrative level" [*Id.* at 4].

Additionally, plaintiff states that the Magistrate Judge's citation to the ALJ's assessment of the Prior Administrative Medical Findings ("PAMFs") "does not stand as a reason for accepting some of Dr. Fisher's Medical Opinion but not all of it" because the ALJ herself offered no link between the Medical Opinion and the PAMFs [*Id.*]. Moreover, plaintiff asserts, the Agency requires consideration of each opining source, meaning the acceptance of one source cannot "stand in the stead of an [un]explained rejection of another source" [*Id.* (citation omitted)].

In response, defendant submits that the Magistrate Judge properly considered the ALJ's evaluation of Dr. Fisher's opinion and "found that substantial evidence supported the ALJ's application of the mandatory factors in evaluating opinion evidence" [Doc. 26, p. 2].

While plaintiff submits her arguments under one umbrella objection relating to *Heston*, the Court finds that plaintiff submits two objections here, the first of which does not appear to actually implicate the contested proposition in *Heston*. Accordingly, the Court will address these objections separately.

14

### i. "Vague Aspects" of Dr. Fisher's Opinion

As noted above, plaintiff asserts that the Magistrate Judge improperly linked the ALJ's discounting of Dr. Fisher's opinion on account of his lack of a complete, function by function assessment to Dr. Fisher's statements as to plaintiff's physical capacity to perform jobs.  In other words, from plaintiff's perspective, the Magistrate Judge inappropriately concluded that the ALJ "[c]learly" found Dr. Fisher's statements about capacity to perform jobs to be vague because the ALJ *also* referenced the absence of a complete, function by function assessment by Dr. Fisher.

While grounding her argument in *Heston*, plaintiff does not suggest that the Magistrate Judge considered other evidence in the record here not cited by the ALJ. Rather, plaintiff asserts that the Magistrate Judge made an improper association between two points in the ALJ's opinion when the ALJ herself did make such an association.

Regardless, however, of how the argument is characterized, plaintiff's objection is without merit.  The ALJ, in finding Dr. Fisher's opinion to be unpersuasive, cited to the fact that Dr. Fisher's opinion was based on a one-time exam, and that Dr. Fisher did not provide a complete function by function vocational assessment [Doc. 7, p. 33]. Reasonably inferring from this that the ALJ must have found Dr. Fisher's opinion to be vague is not an inference that "fills the gap" in any fashion.  *See Harvey v. Comm'r of Soc. Sec.*, No. 16–3266, 2017 WL 4216585, at *7 (6th Cir. Mar. 6, 2017) (citation omitted) ("When an ALJ fails to make a determinative and necessary finding of fact in a sequential step, a reviewing court should not 'fill that gap.'").  Rather, the Magistrate

Judge merely articulated what the ALJ said indirectly, i.e., that she found Dr. Fisher's opinion to be unpersuasive as it lacked the specificity and deeper analysis that would come with a complete function by function vocational assessment. *See Lancaster v. Saul*, No. 3:18-CV-142, 2019 WL 4738017, at *7 (E.D. Tenn. Sept. 27, 2019) (internal quotation marks omitted) ("[E]ven when discussing treating source's opinions, the ALJ may give her reasons in an indirect but clear or implicit[] manner." (quoting *DePottey v. Comm'r of Soc. Sec.*, No. 13-CV-13305, 2014 WL 4197362, at *12 (E.D. Mich. Aug 22, 2014))); *Fleming v. Comm'r of Soc. Sec.*, No. 4:10-CV-25, 2011 WL 3049146, at *10 (E.D. Tenn. July 5, 2011) (citations omitted) (noting that the ALJ's decision "must at least implicitly show" why the ALJ rejected the treating physician's opinion); *cf. Fish v. Comm'r of Soc. Sec.*, No. 1:18-CV-1257, 2019 WL 8129461, at *4 (W.D. Mich. Oct. 3, 2019), *report and recommendation adopted*, No. 1:18-CV-1257, 2020 WL 1028055 (W.D. Mich. Mar. 3, 2020) (stating that the Court is left to guess what the ALJ's reasons might be "because the ALJ's logic or reasoning . . . is not readily discernable from her opinion"). [8]

Accordingly, plaintiff's objection here is **OVERRULED**.

---

[8] Notably as well, ALJs are not even required to explain the consideration given to the factors in § 404.1520c(c)(3)–(5), which includes frequency of examinations and extent of the treatment relationship. *See Francis v. Saul*, 558 F. Supp. 3d 527, 533 (E.D. Mich. 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

### ii. Dr. Fisher's Medical Opinion and the PAMF Analyses

Next, the Court considers plaintiff's second objection. As noted above, plaintiff argues that the Magistrate Judge's "citation to the ALJ's assessment of the [PAMFs] . . . does not stand as reason for accepting some of Dr. Fisher's Medical Opinion but not all of it" when the ALJ herself did not link the two [Doc. 25, p. 4]. Plaintiff further emphasizes the requirement of the Agency to consider each opining source, which includes explaining rejection of a source were that to be the case [*Id.*].

For clarity, the Court cites to the portion of the R&R plaintiff refers to:

> In addition, the State agency physicians, whose opinions the ALJ found generally persuasive, each opined that Plaintiff could sit up to six hours in an eight-hour workday, and they did not include any additional limitations for sitting beyond normal breaks, nor did they include any postural or manipulative limitations related to "twisting"

[Doc. 24, p. 23 (citing Doc. 7, pp. 111–14, 121–26, 135–39, 148–52)]. In discussing Dr. Fisher's opinion specifically, and her reasons for discounting such opinion, the ALJ did not cite to these portions of the administrative record.

As stated previously, the basis for plaintiff's objection here is that the proposition from *Heston* cited by the Magistrate Judge, i.e., that "[t]he court may consider any evidence in the record, regardless of whether it has been cited by the ALJ[,]" is improper, particularly in light of the evolved law on the consideration of opinion evidence. Plaintiff is correct that, in the time since *Heston* was decided, the former treating physicians rule, "which required substantial deference to the opinions of medical sources that had established a treating relationship with the claimant[,]" has been displaced. *Hardy v.*

17

*Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021) (citing in part 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

Under the new regulations, post-March 27, 2017, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "However, the Secretary replaced the rule that afforded a measure of automatic deference to a treating physician with the procedural guarantee that an ALJ will explain—will 'articulate'—how persuasive that officer found *each* medical source." *Hardy*, 554 F. Supp. 3d at 905 (emphasis in original) (quoting 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). Five factors guide this articulation, but the regulations only require the ALJs to discuss supportability and consistency, the first two factors. *Id.* (citing 20 C.F.R. §§ 404.1520(b)(2), (c), 416.920c(b)(2), (c)). Overall, these "new regulations set forth a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Id.* at 906 (internal quotation marks omitted) (citation omitted).

In *Hardy*, the Commissioner and the magistrate judge "described other evidence in the administrative record that could furnish substantial evidence for a nondisability finding and support for rejecting" two physicians' opinions. *Id.* at 907. In doing so, the Commissioner and the magistrate judge relied on *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 786 (6th Cir. 2017), which cites to *Heston*, for the proposition that courts can "consider this evidence, even if the ALJ failed to mention it." *Id.* at 908.

18

The *Hardy* court noted, however, that the Commissioner and magistrate judge's reasoning "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone." *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009)). In other words, "substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error." *Id.* (quoting *Blakley*, 581 F.3d at 410).

Considering this, the Court does not find that the Magistrate Judge's citation to and application of *Heston* in the instant case to be improper. As elucidated by the *Hardy* court, it is not the consideration of other evidence in the record that is impermissible, but rather, allowing for other evidence, and the substantial evidence test, to supplant the mandate of the regulations. *Id.* Here, even setting aside the citation to PAMFs, the Magistrate Judge explained the ALJ's compliance with the requirement to articulate the factors of supportability and consistency in relation to Dr. Fisher's opinion [*See* Doc. 24, pp. 22–23; *e.g.*, *id.* at 22 (citing Doc. 7, p. 28) (finding the ALJ properly addressed consistency because, in part, the ALJ observed that "during most other examinations," plaintiff had a "normal gait, normal sensation, mostly normal range of motion and normal strength"].[9] And plaintiff provides no objection to these analyses.

---

[9] The Court also notes that the Sixth Circuit has found that "identifying additional evidence in the record that provides substantial support for the ALJ's decision does not constitute a *post-hoc* rationalization" and is therefore, not error. *Moore v. Comm'r of Soc. Sec.*, No. 3:23 CV 979, 2024 WL 3197570, at *3 (N.D. Ohio June 27, 2024) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 159 n.8 (6th Cir. 2009)).

Finally, plaintiff emphasizes that the acceptance of one source cannot stand in the stead of an unexplained rejection of another source [Doc. 25, p. 4 (citation omitted)]. While this proposition may be sound, there is no indication in the ALJ's decision, or the R&R's discussion of such decision, that this occurred. In consideration of Dr. Fisher's opinion, the ALJ did not simply conclude in unadorned fashion that his opinion was "less persuasive" than another source's opinion or that another source's opinion was "more persuasive." Rather, the ALJ explained how she reached her assessment of persuasiveness, considering as required, the supportability and consistency of Dr. Fisher's opinion [*See* Doc. 7, p. 28].

Accordingly, considering all the above, plaintiff's objection to the Magistrate Judge's reference to and reliance on *Heston* is **OVERRULED**.

## IV.    Conclusion

For the reasons above, plaintiff's objections [Doc. 25] are **OVERRULED**, and the Court **ACCEPTS** and **ADOPTS** the R&R in whole [Doc. 24]. Accordingly, plaintiff's request for relief [Doc. 16] is **DENIED**, and defendant's motion for summary judgment [Doc. 21] is **GRANTED**. The Commissioner's decision is **AFFIRMED**, and this civil action will be **DISMISSED**. An appropriate order shall enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

20